UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Jean G. Delva, on his own                                       Case No. 2:07-cv-802
behalf and on behalf of those
similarly situated,

Plaintiffs,

v.                                                                      **MEMORANDUM AND ORDER**

Cemex, Inc.,

Defendants.

_____

This matter is before the Court on Plaintiffs' Motions for Summary Judgment.  For

the reasons that follow, the Motions are denied.

**BACKGROUND**

Plaintiffs are drivers for Defendant Cemex, Inc. ("Cemex"), a ready-mix cement

company.  Plaintiffs contend that Cemex violated  the Fair Labor Standards Act ("FLSA")

by not paying them overtime wages for working more than 40 hours in a week.  Cemex

argues that the Motor Carrier Act ("MCA") exempts its drivers from the requirements of

FLSA.  See 29 U.S.C. § 213(b)(1) (stating that FLSA's wage provisions do not apply to "any

employee with respect to whom the Secretary of Transportation has power to establish

qualifications and maximum hours of service pursuant to the provisions of section 31502 of

Title 49").  The relevant regulations define as MCA-exempt employment in "a class of work

which is defined (i) as that of a driver . . . , and (ii) as directly affecting the safety of

operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the [MCA]."  29 C.F.R. § 782.2(b)(2).

The matter was originally brought as a class action under FLSA.  However, the Department of Labor ("DOL") subsequently filed a lawsuit against Cemex and thus, pursuant to FLSA, any employees not already a party plaintiff to a private action can no longer join such action but rather are part of the DOL's lawsuit.  See 29 U.S.C. § 216(b) ("The right . . . to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . . .").  In October 2008, Judge Lazarra declared Plaintiffs' Motion for Class Certification moot and prohibited any further opt-in activity.  (Orders of Oct. 9, 2008 (Docket Nos. 87, 88).)  As of that date, more than 100 putative Plaintiffs had joined this action.

The named Plaintiff, Jean G. Delva, worked exclusively in Florida.  In other words, Delva picked up the components of concrete (for example, cement mix, aggregate, fly ash, sand, and water) at a Cemex storage facility in Florida then drove those components to a customer in Florida.  As the truck drives, it mixes the components together so that, by the time the truck reaches the customer, the mixture has become concrete.

Plaintiffs have filed two separate motions for summary judgment.  In the first, they seek judgment as a matter of law on Cemex's MCA defense, contending that the undisputed facts establish that Plaintiffs' duties were intrastate in nature and thus that the MCA does not exempt Cemex from the requirements of FLSA.  In the second motion, Plaintiffs assert that

the undisputed facts show that Plaintiffs are entitled to liquidated damages under FLSA.

**DISCUSSION**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**A.    MCA Exemption**

It is Cemex's burden to prove that its employees are exempt from the requirements of FLSA.  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995) (citing Brock v. Louvers & Dampers, Inc., 817 F.2d 1255, 1256 (6th Cir. 1987)).  FLSA exemptions "are to be construed narrowly against the employer who asserts them."  Id.  To resolve Plaintiffs' Motion, the Court must determine whether any genuine issues of fact exist as to

3

whether Plaintiffs "were engaged in interstate commerce when making local deliveries for" Cemex. Collins v. Heritage Wine Cellars, Ltd., No. 07-cv-1246, 2008 WL 5423550, at *10 (N.D. Ill. Dec. 29, 2008).

Plaintiffs argue that Cemex cannot avail itself of the MCA exemption to FLSA because there is no dispute that the transportation here was entirely intrastate. Plaintiffs point to the fact that Cemex's drivers pick up their loads in a Florida warehouse and transport the load to a Florida customer, never crossing state lines. The dispositive inquiry, however, is not whether the drivers actually crossed state lines, but whether "what is being transported is actually moving in interstate commerce . . . ." 29 C.F.R. § 782.7(b)(1). According to the MCA's regulations, "[t]ransportation within a single State is in interstate commerce within the meaning of [FLSA] where it forms a part of a 'practical continuity of movement' across States lines from the point of origin to the point of destination." Id. (quoting Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943)). Thus, a shipment is not in interstate commerce "if the shipper has no fixed and persisting transportation intent beyond terminal storage point at the time of shipment." Id. § 782.7(b)(2).

Plaintiffs urge the Court to apply a three-part test set forth in a 1957 Interstate Commerce Commission ("ICC")[1] decision to determine "fixed and persisting intent." Ex Parte No. MC-48, 71 M.C.C. 17 (1957); see also Baird v. Wagoner Transp. Co., 425 F.2d 407 (6th Cir. 1970) (applying MC-48 test). In this test, drivers are not engaged in interstate

---

[1] Congress abolished the ICC in 1996. The ICC's functions are now part of the Department of Transportation ("DOT").

4

commerce where:

> (i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7 (b)(2).

Defendants contend that the 1957 standard is outmoded and ask the Court to apply a standard the ICC first outlined in a 1992 policy statement.  According to the ICC, the interstate commerce question typically arises in the following factual scenario:

> Various types of property ("merchandise") is moved in interstate (or foreign) commerce from points outside a State to in-State warehouses or distribution centers. The shipper may or may not know the specific, ultimate consignee at the time the shipment leaves its out-of-State origin, but the shipper intends that the merchandise move beyond the warehouse. After storage at the warehouse or distribution center, the merchandise is tendered to a for-hire motor carrier for transportation within the State to the ultimate consignee.

Motor Carrier Interstate Transportation— From Out-of-Sta te Through Warehouses to Points in Same State, 57 Fed. Reg. 19,812 (1992).  The key inquiry, according to the ICC, continues to be "fixed and persisting intent."  In other words, if the shipper intends the shipment to "continue in interstate commerce to its ultimate destination" then

> the interstate character of the traffic is not changed simply because the merchandise may move through a warehouse or terminal facility on the way to its ultimate destination.  Where a distribution center or warehouse serves only as temporary storage to permit orderly and convenient transfer of goods in the course of what the shipper intends to be a continuous movement to destination, the continuity of the movement is not broken at the warehouse.

5

Id.  A determination of whether the shipper has such "fixed and persisting intent" should be

made in light of the following factors, among others:

> Although the shipper does not know in advance the ultimate destination of specific shipments, it bases its determination of the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State.

> No processing or substantial product modification of substance occurs at the warehouse or distribution center. However, repackaging or reconfiguring (secondary packaging) may be performed.

> While in the warehouse, the merchandise is subject to the shipper's control and direction as to the subsequent transportation.

> Modern systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center.

> The warehouse utilized is owned by the shipper.

Id. at 19,813.  However, the following factors are not sufficient to break the continuity

required for the interstate character of the shipment:

> [T]he absence of time limitations on storage and the absence of storage-in-transit receipts issued by the warehouse;

> The shipper's lack of knowledge of the specific, ultimate destination or consignee at the time the shipment leaves its out-of-State origin;

> Separate bills of lading for the inbound and outbound movements instead of through bills of lading;

> Storage-in-transit tariff provisions;

> Storage receipts issued by the warehouse distribution center;

> Time limitations on storage;

> Payment of transportation charges by warehouse or distribution center, when

6

the shipper or consignee is ultimately billed for these charges;

Routing of the outbound shipment by the warehouse or distribution center;

A change in carriers or transportation modes at a distribution facility;

Use of brokers retained by the shipper;

Use of a warehouse not owned by the shipper.

Id.

Neither the 11th Circuit nor any district court within the Circuit has determined that courts should use the 1992 standard rather than the 1957 standard (or vice versa).  Other courts, however, have specifically examined the two standards and have concluded that the 1992 standard is the more appropriate standard.  See Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692, 711 (S.D. Ohio 2006); Atlantic Indep. Union v. Sunoco, Inc., No. Civ. A.03-4389, 2004 WL 1368808, at *7 (E.D. Pa. June 16, 2004); Collins, 2008 WL 5423550, at *14. These courts reasoned that even courts applying the 1957 test stressed a totality-of-the-circumstances approach not limited to the three 1957 factors.  Moreover, three different circuit courts of appeals have criticized the 1957 test as outmoded or no longer appropriate. See Roberts v. Levine, 921 F.3d 804, 812 (8th Cir. 1990); California Trucking Ass'n v. I.C.C., 900 F.2d 208, 213 (9th Cir. 1990), Central Freight v. I.C.C., 899 F.2d 413, 421 (5th Cir. 1990).  Finally, "in the face of modern advancements and new shipping techniques, [the 1957 test] is not [sic] longer sufficient to determine a shipper's intent accurately."  Musarra, 454 F. Supp. 2d at 711.  This Court agrees with the well-reasoned determinations of its sister courts, and will apply the 1992 standard, rather than the 1957 three-part test.

1.    <u>Shipper's intent</u>

The first factor in the 1992 standard is whether the shipper has a factual basis for determining the volume of goods to be shipped through the warehouse.  Plaintiffs do not present any evidence on this factor, because it is not included in the three-part 1957 test.  Thus, Plaintiffs have not established that they are entitled to summary judgment on the basis of this factor.

2.    <u>Processing</u>

The second factor is whether "processing or substantial product modification of substance occurs at the warehouse or distribution center."  Plaintiffs contend that the concrete components are mixed together at the warehouse, and that such mixing constitutes processing.  The evidence, however, shows that the components are in fact kept separate at the storage facility and are only mixed when they are loaded on a particular truck for delivery to the consumer.  (Pls.' Ex. C (1st Tiller Dep.) at 15 ("There would be bins set up for the construction aggregates and sand.  There's plastic containers that hold the add mixture chemicals.").)   Indeed, the evidence establishes that different amounts of concrete components are mixed at the time the truck is loaded, based on the particular customer's needs.  (Pls.' Ex. A (2d Tiller Dep.) at 18; Ex. C (1st Tiller Dep.) at 12.)  Thus, the only product modification occurs after the storage of the concrete components, not at the storage facility itself.  Summary judgment is not warranted on this factor.

3.   <u>Control over materials and warehouse</u>

There is no dispute that once the concrete components arrived at a Cemex storage facility, they were subject to Cemex's complete control.  Nor is there any dispute that the storage facilities Cemex used were owned by Cemex.  Thus, Plaintiffs' Motion cannot be granted on the basis of these factors.

4.   <u>Tracking systems</u>

David Tiller, Cemex's corporate representative, testified at length about the comprehensive computer tracking system Cemex uses to determine how much of each concrete component to ship to a particular storage facility, and how much concrete to deliver to each customer.  This factor cannot support Plaintiffs' Motion.

5.   <u>Other factors</u>

In the main, Plaintiffs rely on factors that the ICC cautioned could not be used to establish a lack of interstate continuity.  For example, Plaintiffs contend that the concrete components languish in Cemex's storage facilities for up to 10 years.  As the 1992 policy statement makes clear, however, the absence of time limitations on storage is not relevant to determining the interstate character of the shipment.  Moreover, the evidence on which Plaintiffs rely for this argument is lacking.  Cemex's representative testified that he had seen cement in storage for more than ten years.  (Pls.' Ex. C. (1st Tiller Dep.) at 18.)  He did not say that this was common practice, or even that he had seen cement in storage at Cemex facilities for ten years.  Thus, even if storage time were relevant, Plaintiffs' evidence does not establish that Cemex stored any concrete components for long periods of time.

Plaintiffs have not established that they are entitled to summary judgment on Cemex's MCA exemption defense. There are questions of fact as to whether Cemex had the "fixed and persisting intent" that the MCA requires.

## B.   Liquidated Damages

FLSA provides that an employer who violates its provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiffs ask for summary judgment on the issue of Cemex's liability for liquidated damages.

This inquiry is premature. Liquidated damages are available only if Plaintiffs establish their entitlement to compensatory damages and the evidence establishes that Cemex did not act in good faith and with a reasonable belief that it was in compliance with FLSA. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1282 (11th Cir. 2008) ("When the jury finds an employer has violated the FLSA and assesses compensatory damages, the district court generally must add an award of liquidated damages in an equal amount."); id. ("[T]he district court has discretion to reduce or deny liquidated damages 'if the employer shows . . . that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that'" he was not violating FLSA.) (quotation omitted). Plaintiffs have not yet established that they are entitled to compensatory damages under FLSA. Summary judgment is therefore not appropriate on the issue of liquidated damages.

10

**CONCLUSION**

Genuine issues of material fact remain for resolution on both the applicability of Cemex's MCA exemption defense and on the issue of liquidated damages.  Plaintiffs' Motions for Summary Judgment on these issues must therefore be denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Plaintiffs' Motion for Summary Judgment on Cemex's Motor Carrier Act defense (Docket No. 107) is **DENIED**; and

2.   Plaintiffs' Motion for Summary Judgment on the issue of liquidated damages (Docket No. 119) is **DENIED**.

Dated:  January 19, 2010

_s/Paul A. Magnuson_
Paul A. Magnuson
United States District Court Judge

11